UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER A. B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-00152-KMB-RLY |
| | ) |
| LELAND C. DUDEK,[2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Christopher B. applied for supplemental security income[3] from the Social Security Administration ("SSA") on March 15, 2022, alleging an onset date of June 5, 2019. [Dkt. 9-2 at 11.] Administrative Law Judge Jody Odell (the "ALJ") issued a decision on July 12, 2023, concluding that Christopher was not disabled and therefore not entitled to receive the requested benefits. [*Id.* at 19.] The Appeals Council denied his request for review on November 21, 2023. [*Id.* at 2.] On January 23, 2024, Christopher timely filed this civil action and asks the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

[2] Leland C. Dudek is the Acting Commissioner of Social Security as of the date of this opinion. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[3] Disability Benefits and Supplemental Security Income claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

# I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND[4]

Christopher was 20 years old when he applied for disability benefits. [Dkt. 9-2 at 18.] He does not have any past relevant work. [*Id.*]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Christopher was not disabled. Specifically, the ALJ found as follows:

- At Step One, Christopher has not engaged in substantial gainful activity since March 15, 2022, the alleged onset date. [*Id.* at 13.]

- At Step Two, Christopher has the following severe impairments: bilateral hearing loss, speech/language impairment, attention deficit hyperactivity disorder (ADHD), and obsessive compulsive disorder (OCD). [*Id.*]

- At Step Three, Christopher does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.*]

- After Step Three but before Step Four, Christopher has the RFC

    to perform a full range of work at the medium exertional level but with the following nonexertional limitations: The claimant can work in an environment with a noise intensity level of 3 or less, based on the noise intensity level chart set forth by the Department of Labor (DOL). All work-related instructions should be communicated face-to-face or in writing. The claimant is able to follow simple routine tasks with the ability to sustain the attention, concentration, persistence, and pace needed to complete those tasks. The claimant can have occasional interaction with the general public, but not in a customer services or transactional capacity. The claimant can have occasional interaction with supervisors and co-workers, but do no collaborative work, such as group projects requiring frequent communication and cooperation with co-workers. The claimant can manage routine changes in the work environment.

  [*Id.* at 15.]

- At Step Four, Christopher has no past relevant work. [*Id.* at 18.]

- At Step Five, relying on testimony from the vocational expert ("VE"), and considering

---

[4] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

Christopher's age, education, and RFC, the ALJ concluded that there were jobs that existed in the national economy that Christopher could have performed through the date of the decision, including industrial cleaner, laundry worker, and stock selector. [*Id.* at 19.]

### III. DISCUSSION

Christopher raises two issues for the Court's review: (1) whether the ALJ committed reversible error by "illogically rejecting a supported and consistent medical opinion"; and (2) whether the ALJ committed reversible error by finding that 24,500 jobs represented a significant number in the national economy. [Dkt. 15 at 1.] The Court will address each issue in turn.

**A. Dr. Sprinkle's Medical Opinion**

Dr. Melissa Sprinkle, Psy.D., performed a psychological consultive exam on Christopher in June 2022. [Dkt. 9-7 at 302.] She executed clinical tests and read the record before concluding with the following Medical Source Statement:

> The results from this evaluation suggest that the claimant can follow simple directions and process basic information. His memory is weak. His mental calculation abilities are weak. His fund of general information and analytical skills are weak. His conceptual ability is intact. His judgment and insight are commensurate with his intellectual abilities. He can communicate his thoughts and track and transition in simple conversation, but struggles to understand and engage in more complex conversation. Given the claimant's psychiatric symptoms, he may struggle to interact with large groups of coworkers, the public, and supervisors. He may also struggle to perform in a loud and chaotic environment[.] Compared to his peers, he may require more supervision, assistance, and redirection when learning new tasks and concepts. He would likely struggle to successfully perform in a position that requires him to read, write, count money, make change, use a computer, or engage in complex reasoning or in a rapidly changing, fast-paced environment. He may also require assistance with completing paperwork and job applications and may benefit from the assistance of a job coach. He would likely perform best in a routinized, simple, or manual laboring job that is located in a quiet environment and limits his contact with others. [T]aken together, if provided adequate training, structure, and strong supervision within an isolated environment, it is believed that the claimant would be capable of performing very simple work activities. Without this support and structure, however, it is believed he would struggle to learn new information, listen and follow instructions, and maintain his attention to independently complete assigned work activities[.]

5

[*Id.* at 308-09.]

The ALJ found Dr. Sprinkle's opinion to be "somewhat persuasive." [Dkt. 9-2 at 18.] The ALJ stated that Dr. Sprinkle based her opinion "on her clinical findings and observations from a one-time exam." [*Id.*] According to the ALJ, Dr. Sprinkle's opinion was "consistent" with the evidence. [*Id.*] The ALJ noted, however, that "it was long-winded and not put in vocationally relevant terms and was vague." [*Id.*]

Christopher argues that the ALJ's characterization of Dr. Sprinkle's opinion is not a valid reason to not fully rely on a medical opinion. [Dkt. 15 at 8.] Because the ALJ found the opinion supported and consistent, Christopher argues that the ALJ should have considered it persuasive. Christopher argues there are other factors the ALJ may consider, as enumerated in § 416.920c(c), but she did not mention or consider these factors. [*Id.*] Christopher claims that the ALJ failed to offer a "good explanation" for "rejecting" the opinion and the reasons offered were "invalid." [*Id.*] Christopher alleges the limitations are not reflected in the RFC. [*Id.* at 8.] Christopher also requests that if the Court agrees, the Court should order a finding of disability in this case because there would allegedly be nothing left to be resolved on remand. [*Id.* at 12.]

The Commissioner argues that the ALJ properly assessed Dr. Sprinkle's opinion, especially since she addressed supportability and consistency as required by the applicable regulations. [Dkt. 17.] The Commissioner argues that the evidence was consistent with Dr. Sprinkle's determination and that the opinion was vague and imprecise, which is a valid reason for the ALJ to find it somewhat persuasive. [*Id.* at 5.] The Commissioner states that the factors in § 416.920c(c)(5) may be considered but that an ALJ may also consider an opinion's "particularity and vocational relevance." [*Id.*] The ALJ's failure to not adopt all of Dr. Sprinkle's suggestions is an indication of its lack of vocationally relevant terms. [*Id.* at 7.] The

6

Commissioner also points out that the RFC reflects various aspects of Dr. Sprinkle's evaluation. [*Id.*] These RFC limitations accurately reflect the ALJ's determination that Dr. Sprinkle's opinion was partially persuasive. [*Id.* at 8.] Finally, the Commissioner argues that Christopher's argument that benefits should be awarded at this stage of the proceedings is baseless, particularly because Dr. Sprinkle's opinion "opined that [P]laintiff could work under certain circumstances." [*Id.* at 8.]

Christopher replies that because Dr. Sprinkle provided specific limitations and the ALJ found the opinion to be supported and consistent it must be fully credited. [Dkt. 18 at 1.] Thus, Christopher believes that no issues are left to resolve and it would be appropriate for the Court to directly award disability benefits at this stage of the case. [*Id.* at 2.] Christopher further emphasizes that "long-winded" and "vague" are not listed in the enumerated factors the ALJ may consider. [*Id.* at 3-5.] Christopher also claims the ALJ cannot say the medical opinion is vague since she never asked the VE if the terms used were vocationally relevant. [*Id.* at 5.] Christopher states the Court may not look at the "influence" of the medical opinion on the RFC, but instead the ALJ had to address the report in its entirety and explain the basis of the RFC. [*Id.* at 7.] Christopher repeats his claim that an ALJ must have a "good reason" to reject or discount the opinion of a physician that the "claimant is disabled." [*Id.* at 7-8 (quoting *Bearsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014)).]

In evaluating expert medical opinions, the ALJ may consider the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c). The "most important factors" are supportability and consistency, and the ALJ must "explain how" she considered these two factors. 20 C.F.R. § 404.1520c(b)(2). "The supportability factor focuses on what the source brought forth to support his or her findings."

7

*Stevens v. Kijakazi*, 2022 WL 1000598, at *6 (E.D. Wis. Apr. 4, 2022). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency, in contrast, "compares the source's findings to evidence from other sources." *Stevens*, 2022 WL 1000598, at *6. "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

An ALJ may not rely solely on vagueness in rejecting a medical opinion. *See Tanya S. v. Kijakazi*, 2021 WL 6201733, at *12 (N.D. Ind. Dec. 31, 2021) (remanding where the ALJ "simply rejected [the consultative examiner's opinion] for vagueness, with minimal analysis."). However, "[t]he duty to recontact [a consultative examiner] only applies where the evidence is insufficient to reach a decision" and where "the record as a whole inadequate to determine disability." *Brenda S. v. Kijakazi*, 2021 WL 3749048, at *4-5 (S.D. Ind. Aug. 25, 2021); *see also See Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018) (explaining that an ALJ is not required to recontact a doctor where the record contains adequate information to make a decision on disability).

In Christopher's case, it is undisputed that the ALJ considered supportability and consistency. Christopher does not challenge that; rather, he argues that because the ALJ found the opinion to be supportable and consistent, the ALJ must also find the opinion to be persuasive. The Court does not agree. The ALJ is expressly allowed to consider other factors as enumerated 20 C.F.R. § 404.1520c(c). The ALJ ultimately concluded that that she found Dr. Sprinkle's opinion "somewhat persuasive" because while consistent with the evidence, it was "long-winded and not put in vocationally relevant terms and was vague." [Dkt. 9-2 at 18.] Christopher argues that these are not valid reasons to reject a medical opinion. While is true that an ALJ may not rely solely on

8

vagueness in rejecting a medical opinion, *Tanya S.* 2021 WL 6201733, at *12, that is not what happened in Christopher's case. Importantly, the ALJ here did not outright reject Dr. Sprinkle's opinion—as set forth more fully below, the ALJ actually incorporated aspects of it in formulating the RFC. It is well-established that review of the ALJ's opinion is subject to a very differential standard, and the ALJ need only "minimally articulate" her rationale. *Elder v. Astrue*, 529 F.3d. 408, 413 (7th Cir. 2008). The ALJ in this case clearly did that, undisputedly analyzing supportability and consistency while ultimately finding the opinion to be somewhat persuasive because the ALJ found it to be "vague," "long-winded," and not put in "vocationally relevant terms."[5] The Court finds that the ALJ met the applicable standard for minimally articulating her rationale for how she treated Dr. Sprinkle's opinion, especially considering the additional points set forth below.

Even if the ALJ would have found Dr. Sprinkle's opinion to be highly persuasive, the Court notes that ultimately, Dr. Sprinkle found that Christopher "would be capable of performing very simple work activities." [Dkt. 9-7 at 309.] Because the ALJ did not reject or discount a medical opinion that found that Christopher was disabled, his reliance on *Bearsley* and its progeny are inapplicable. It is clear from the record that the ALJ thoroughly considered Dr. Sprinkle's opinion. The ALJ restated all of Dr. Sprinkle's opinion in the Opinion Evidence portion of the decision and explained that Dr. Sprinkle's decision and diagnostic testing were consistent with the evidence. [Dkt. 9-2 at 18.] Likewise, the ALJ stated that she developed the RFC based on "all the symptoms

---

[5] To be clear, the Court appreciates when the record contains opinions from medical professionals that thoroughly detail the bases of their opinions. Thus, the Court cautions the ALJ from criticizing an opinion for being too "long-winded," since a thorough analysis typically assists both the ALJ and this Court's analysis if there is an appeal. In this case, however, the ALJ did not outright reject the medical opinion at issue at all, much less for that reason alone. Rather, the ALJ's candid analysis of Dr. Sprinkle's opinion was that while it was supported and consistent, ultimately it only somewhat persuasive for the various reasons stated.

and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and she considered the medical opinions. [*Id.* at 15.] The RFC clearly contained aspects of Dr. Sprinkle's opinion, appropriately reflecting the ALJ's decision that the opinion was "somewhat" persuasive. For example, Dr. Sprinkle found that Christopher may "struggle to perform in a loud and chaotic environment," [dkt. 9-7 at 308], and the ALJ limited Christopher to work with a noise intensity level of 3 or less. [Dkt. 9-2 at 15.] Dr. Sprinkle also opined that Christopher "may struggle to interact with large groups of coworkers, the public, and supervisors," [dkt. 9-7 at 308], and the ALJ concluded that he should do "no collaborative work" with only "occasional" interaction with the general public and not in a customer service or transactional capacity. [Dkt. 9-2 at 15.] Thus, the ALJ incorporated at least some of Dr. Sprinke's suggested limitations into the RFC, and the ALJ's opinion exceeds the required minimal articulation standard.[6]

       Christopher emphasizes that the ALJ never asked the VE if the terms used in Dr. Sprinkle's opinion were vocationally relevant. Christopher cites no case law for his position that an ALJ must ask a VE their opinion about specific terms used in a medical opinion. As a reminder, the ALJ—not the doctor and not the VE—is responsible for the development of the RFC and its implications for the work the claimant can do. *See DuCharme v. Kijakazi*, 2022 WL 3287974, at *3 (7th Cir. 2022) ("the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide").

---

[6] Christopher argues in his reply brief that Dr. Sprinkle suggested Christopher needed a job coach and a job coach is an accommodation that precludes the performance of competitive work. [Dkt. 18 at 1.] The Court does not agree with this characterization. Dr. Sprinkle did not say that Christopher required a job coach to work at all; rather, she merely stated that he "may benefit from the assistance of a job coach." [Dkt. 9-7 at 309.] As such, the Court finds that Christopher's argument on this point is unpersuasive.

For all of these reasons, the Court finds that Christopher has not shown reversible error on the ALJ's consideration of Dr. Sprinkle's opinion. It is undisputed that the ALJ considered the consistency and supportability of the opinion, as required. The ALJ did not reject Dr. Sprinkle's opinion, rather the ALJ found it to be somewhat persuasive and aspects of it were incorporated in formulating the RFC. But the ALJ found it to be only somewhat persuasive because the ALJ articulated that the opinion was vague, long-winded, and did not use vocationally relevant terms. For all of the reasons stated herein, the Court does not find that Christopher has shown reversible error on his points raised with regard to the ALJ's treatment of Dr. Sprinkle's opinion.

### B. Significant Jobs in the National Economy

Christopher contends that his case should be remanded because the VE did not identify a significant number of jobs in the national economy that Christopher could perform with his RFC. The VE identified 24,500 jobs in the national economy that Christopher could perform under the hypotheticals presented by the ALJ. [Dkt. 9-2 at 67-68.] Christopher's attorney at the hearing objected to the ALJ that this number was not significant. [*Id.* at 71.] Christopher reiterates this argument now. [Dkt. 15 at 12-14.] Christopher also states that remand is appropriate when an ALJ does not "elicit testimony" establishing jobs were present in the region where the plaintiff lived and that the Court must be attentive to the difference between regional and national numbers. [*Id.* at 13-14.]

In response, the Commissioner argues that the number of jobs Christoper could perform is well within the 10,000-30,000 range developed by courts in this and other circuits. [Dkt. 17 at 9 (collecting cases).] The Commissioner also argues there is no specific threshold, rather, the ALJ has discretion to decide if the number is significant. [*Id.*] The Commissioner emphasizes that the ALJ also does not have to consider the number of jobs in a Christopher's region. [*Id.* at

11

10.]

In reply, Christopher again argues that the regional numbers are not significant in this case. [Dkt. 18.]  Christopher encourages the Court to look to a recent decision from the District of Rhode Island that used "common sense" to find that 3.2 jobs in a region was not significant. [*Id.* at 10 (citing *Karissa B. v. O'Malley*, 2024 U.S. Dist. LEXIS 84395 (D.R.I. May 9, 2024)).] Christopher requests the Court adopt *Karissa B's* "common sense" approach as more reasonable than the current approach utilized by the Seventh Circuit Court of Appeals.  [*Id.*]

"In determining whether there is a 'significant' number of jobs in the national economy, the regulatory scheme gives the ALJ discretion to decide, using substantial evidence, when a number of jobs qualifies as significant." *Milhem v. Kijakazi*, 52 F.4th 688, 696 (7th Cir. 2022). Substantial evidence is defined as "evidence a reasonable person would accept as adequate to support the decision." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).  Precedent from the Seventh Circuit Court of Appeals "does not provide a clear baseline for how many jobs are needed" for an ALJ to conclude that a "significant" number of jobs exist.  *Milhem*, 52 F.4th at 696.

Whether a vocational expert's testimony constitutes substantial evidence will be answered on a case-by-case basis, "as is usually true in determining the substantiality of evidence." *Id.* at 1157.  A vocational expert's testimony can be considered substantial evidence even when the vocational expert does not disclose the data on which the analysis relies. *Id.* at 1156.  Specifically with respect to a vocational expert's testimony regarding the number of jobs in the national economy, the Seventh Circuit Court of Appeals has noted that such an "estimate will be just that—an estimate," given the many "variables [that] combine to create uncertainty in a [vocational expert]'s job-number estimate." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir.

12

2018).

The Court is not persuaded by Christopher's argument and instead will follow binding precedent from the Seventh Circuit Court of Appeals holding that the ALJ has discretion to decide if the number of jobs given by a VE is significant. *Milhem*, 52 F.4th at 696. The Seventh Circuit has consistently declined to adopt a baseline threshold of available jobs that must exist in the national economy to be considered significant. In this case, the ALJ properly posed limiting questions to the VE, reviewed the VE's testimony in accordance with SSR 00-4p, and found 24,500 jobs to be significant. [Dkt. 9-2 at 18.] Other courts in the Seventh Circuit have found a similar numbers of jobs to be significant. *See, e.g.*, *Harry v. Kijakazi*, 2022 WL 17584174 (E.D. Wisc. Dec. 12, 2022) (29,800 jobs found significant); *Nilda G. O'Malley*, 2024 WL 4647855 (N.D. Ill. Oct. 31, 2024) (17,000 jobs found significant); *Dorothy B. v. Berryhill*, 2019 WL 2325998 (N.D. Ill. May 31, 2019) (17,700 jobs found significant). The Court finds that the ALJ in this case did not abuse her discretion in concluding in this case that 24,500 jobs in the national economy was significant.

Christopher takes issue with the Commissioner's citation to *Mitchell v. Kijakazi*, 2021 U.S. App. LEXIS 21697 (7th Cir. 2021) and *Ducharme v. Kijakazi*, 2022 U.S. App. LEXIS 22297 (7th Cir. 2022). In *Mitchell*, the court held that 30,000 jobs was a significant number, but it did so relying on a case that held that 1,000 in the national economy was sufficient when that case actually stated 1,000 jobs in the *regional* economy was sufficient. 2021 U.S. App. LEXIS 21697 at 8. The Seventh Circuit Court of Appeals clarified that incorrect assumption in *Milhem v. Kijakazi*, 52 F. 4th 688 (7th Cir. 2022). *Ducharme* held that the ALJ could ignore regional numbers. 2022 U.S. App. LEXIS 22297. But, as Christopher points out, this holding was made before the decision in *Milhem*. Importantly, however, Christopher has not pointed to any binding

13

Seventh Circuit case law requiring the ALJ or this Court to examine the number of jobs at a regional level. *Milhem* does not make such a holding; rather, it merely warns courts to be "attentive to the difference between regional and national job numbers in this discussion." 52 F. 4th at 696; *see also Patrick J.W. v. Comm'r of Soc. Sec.*, 2023 WL 3963807, at *7 (C.D. Ill June 12, 2023) ("[*Milhem*] did *not* impose any requirement that there *must* be evidence pertaining to regional job numbers in the record before the ALJ.") (emphases in original).

Christopher also cites *John S. v. Kijakazi* as holding that remand is appropriate to address "unresolved questions" about the regional distribution of 49,000 jobs where an ALJ did not elicit testimony that the jobs were present in the claimant's region. 2022 U.S. Dist. LEXIS 88977 (S.D. Ind. May 17, 2022). The Court finds Christopher's reliance on *John S.* misplaced. In that case, the court was already remanding the case on another issue and simply ordered the ALJ to "take care" to ensure that "any finding at Step 5 is supported by substantial evidence." [*Id.* at *20.] *John S.* neither affirmatively declared 49,000 jobs to be insignificant nor did it require region-based analysis.

For the reasons stated herein, the Court does not find that the ALJ committed reversible error by finding 24,500 jobs in the national economy to be significant in this case. The Court has cited case law from this Circuit holding a similar number of jobs to be significant, and nothing in the binding case law required the ALJ or this Court to conduct a regional analysis. For these reasons, the Court finds that the ALJ did not abuse her discretion, and Christopher has not shown reversible error on this point.

## IV. CONCLUSION

The standard for disability claims under the Social Security Act is stringent. *Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018). "The Act does not contemplate degrees of disability

or allow for an award based on partial disability." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010) (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Christopher to reverse the ALJ's decision that he was not disabled during the relevant period. Therefore, the ALJ's decision is **AFFIRMED**. Final judgment shall issue accordingly.

    **SO ORDERED**.

    Date: 3/13/2025

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution

All ECF-registered counsel of record via email